ANSTEAD, Judge.
This is an appeal from a consent final judgment in an action for subrogation. At issue is whether the Florida Patient’s Compensation Fund is entitled to indemnification from a hospital employee or the employee’s insurance carrier when the Fund has settled a claim made against the hospital based solely upon the employee’s negligence. We affirm the trial court’s judgment holding that the Fund may recover.
This case originated in May, 1980 with a complaint filed by Marion Falk against Holy Cross Hospital and the Fund. Nurse Sue A. Higley was not a named defendant in the action, but the parties agree that the hospital’s liability therein was predicated solely upon her alleged negligence. At the time of the action, the hospital had a $100,-000 liability insurance policy with St. Paul Fire Insurance Company. The hospital was also a member of the Fund, which provided the hospital with unlimited coverage over and above the $100,000 provided by St. Paul. The Falk suit was settled in 1982 when the Fund agreed to pay $425,-000 on the hospital's behalf. Subsequently, the Fund filed this action, alleging that it was subrogated to the hospital’s right of indemnification against Higley and Continental Insurance Company, with whom Higley had a $200,000 policy of liability insurance. The defendants filed a motion for summary judgment, on the grounds that Section 768.54, Florida Statutes (1979), the act creating the Fund, precluded recovery by the Fund against a hospital employee whose acts were covered by the Fund. The court denied summary judgment, and found as a matter of law that Higley was not an insured under the hospital’s agreement with the Fund and that the Fund was not barred from seeking subrogation from her. Thereafter, the appellants agreed to the entry of a consent final judgment, by which summary judgment was entered in favor of the Fund in the amount of the coverage provided by Continental.
The statutory scheme creating the Florida Patient’s Compensation Fund does not expressly authorize the Fund to sue a hospital employee for indemnification. The complaint filed by the Fund against Higley relied solely on common law indemnification principles. According to these principles, an insurance company is entitled to indemnity from an insured’s employee for amounts it pays out on behalf of an insured employer vicariously liable for the acts of the employee, unless the employee is also an insured under the policy. Allstate Insurance Co. v. Fowler, 480 So.2d 1287, 1290 (Fla.1985); Continental Casualty Co. v. Godur, 476 So.2d 242, 243 (Fla. 3d DCA 1985); Marina Del Americana, Inc. v. Miller, 330 So.2d 164, 165 (Fla. 4th DCA 1976). The exception against indemnification is based on the premise that a liability insurance contract promises to pay damages assessed against any insured. The basic insuring agreement would be rendered meaningless if the insurance company could turn around and recover from one of its insureds. Accordingly, we must first determine whether hospital employees, in this case Nurse Higley, are “additional insureds” under the hospital’s contract with the Fund so as to bar indemnification.
The express language of the statute creating the Fund makes coverage available to “health care providers,” defined as hospitals, physicians, osteopaths, podiatrists, health maintenance organizations, ambulatory surgical centers, professional associations and other medical facilities. Section 768.54(l)(b). Nurses are not included as health care providers. Cf Finkelstein v. North Broward Hospital District, 484 So.2d 1241, 1243 (Fla.1986) (interpreting section 768.56). Thus Fund coverage is available to hospitals and medical doctors but not to nurses. The statute also suggests that the Fund will be liable only for *485 claims against health care providers. See § 768.54(3)(a). Had a money judgment been obtained against Nurse Higley individually and not against the hospital, the Fund would not have been obligated to pay. The Fund's position is that since Nurse Higley was not and could not have been a member, she cannot be considered an insured under the hospital’s contract with the Fund.
The appellants contend that nurses are covered insureds under subsection 768.-54(2)(e), which reads as follows:[1]
The limitation of liability afforded by the fund for a participating hospital or ambulatory surgical center shall apply to the officers, trustees, volunteer workers, trainees, committee members (including physicians, osteopaths, podiatrists, and dentists), and employees of the hospital or ambulatory surgical center, other than employed physicians licensed under chapter 458, physician’s assistants licensed under chapter 458, osteopaths licensed under chapter 459, dentists licensed under chapter 466, and podiatrists licensed under chapter 461. However, the limitation of liability afforded by the fund for a participating hospital shall apply to house physicians, interns, employed physicians in a resident training program, or physicians performing purely administrative duties for the participating hospitals other than the treatment of patients. This limitation of liability shall apply to the hospital or ambulatory surgical center and those included in this subsection as one health care provider.
We agree with the Fund that this subsection does not furnish a basis for a holding that nurses and other employees are directly insured by the Fund. Although the statutory language does indicate a legislative intent that a hospital’s contract with the Fund will cover the hospital for vicarious liability for the actions of its officers, volunteers, trainees, and other employees including nurses, it does not provide that nurses are separately covered insureds under the agreement. Such an interpretation would be inconsistent with the statutory provisions discussed above, which limit eligibility for Fund coverage to a narrowly defined group of health care providers. Hence, we believe that hospital employees such as Nurse Higley are not additional insureds under the hospital’s contract with the Fund, and that traditional indemnity principles would permit an action for indemnity by the Fund against an employee and the employee’s insurance carrier. See Fowler, Godur, Miller.
Notwithstanding our determination that nurses are not “additional insureds” of the Fund, we must also consider appellants’ claim that indemnity should be barred for public policy reasons. In reviewing legislation, the “public policy” we must follow is that announced by the Florida legislature. The Florida Patient’s Compensation Fund was instituted as a non-profit entity to provide medical malpractice protection to the physicians and hospitals who join it, as well as a method of payment to medical malpractice plaintiffs. Florida Patients Compensation Fund v. Von Stetina, 474 So.2d 783, 788 (Fla.1985). As the court in Von Stetina observed, the clear legislative intent of the Act was to provide a solution to the perceived problem of high malpractice insurance rates and the attendant threat posed by such rates to the continuing availability of health care in Florida. Id. Moreover, the statutory scheme would appear to represent an effort by the legislature to create a comprehensive, efficient, and economical system for disposing of medical malpractice claims. Appellants contend that permitting the Fund to have a right of indemnity against a negligent hospital employee would be inconsistent with these legislative purposes. Appellants note that before the advent of the Fund, a hospital employee had the choice of purchasing his or her own insurance, or paying a portion of his or her salary toward a group coverage policy taken out by the hospital. If the employee chose the second route, which was normally the more economical, the em *486 ployee knew that he or she was protected from being sued for subrogation by the hospital’s insurer, because the employee was an additional insured under the hospital’s policy. For example, in the present case, Nurse Higley was an additional insured under the hospital’s policy with St. Paul, the insurer for the first $100,000 of damages on a claim. Under the established law of subrogation discussed above, Nurse Higley could not be held liable for the $100,000 in damages payable by St. Paul, since she was an insured on that policy. The advent of the Patient’s Compensation Fund puts employees in a different and difficult position. Employees themselves are not among the health care providers enumerated in section 768.-54(l)(b) and are thereby prevented from taking advantage of the new insurance scheme by becoming Fund members. Simultaneously, they have effectively lost the option of group insurance, except to the limited extent that hospitals are required to carry private insurance, above which they are permitted to rely on the Fund. Consequently, hospital employees appear to be caught between a rock and a hard place. If the Fund is permitted to seek subrogation from hospital employees, these employees will be forced to seek private insurance. Appellants contend this result would directly conflict with the legislative objective to provide an alternative to the health care profession from the spiralling expense of private medical malpractice insurance.
We agree that there is much merit in appellants’ contentions. Allowing the Fund to seek subrogation would appear to be economically inefficient. Since the hospital’s liability is dependent upon that of its employees, in most instances the cost of assuming the risk of liability created by the hospital and its employees will be the same whether the hospital alone is the insured or the employees are also insureds. The Fund is directly compensated, through assessments paid by member hospitals, for assuming the risk of damages it might have to pay out because of the negligence of an employee. Presumably, the hospitals will in turn pass these costs on in some manner to employees and patients in the form of lesser salaries and higher charges. To permit a suit for subrogation is to upset this delicate economic balance by providing a windfall to the Fund at the expense of hospital employees and the rest of the public. This is in addition to the waste and expense of yet another stage of litigation. There can be no question that the Act was designed to compensate patients for damages caused by the negligent acts of both health care providers and hospital employees. § 768.54(2)(e). The former pay for this coverage directly; the latter are protected through the hospital’s policy with the Fund. It is equally clear that the Fund has no right of indemnification or subrogation against a health care provider, since the health care provider is an insured. There appears to be little rational basis for treating hospital employees differently; indeed, such a result seems to discriminate unfairly between different classes of health care professionals, in this case, nurses as opposed to health care providers eligible for coverage under the Fund.
Notwithstanding our sympathy for appellants’ position, we find no legal bar to appellee’s claim for indemnification. In this case, it is undisputed that Nurse Hig-ley had her own policy of insurance with Continental Insurance Company. The consent final judgment was entered against both Higley and Continental, but the award was limited to the amount of coverage under the policy. This situation is analogous to one in which the insurer of a vicariously liable party seeks to follow the insurer of the actively negligent party in its obligation to pay a claim. Metropolitan Property and Life Insurance Co. v. Chicago Insurance Co., 479 So.2d 114, 115 (Fla.1985). Had Nurse Higley been a named party defendant in the main action her insurance coverage with Continental would have to be exhausted before her vicariously liable employer’s coverage would be payable. The fact that she was not a named party should not change this result.
Because we believe the issues involved herein are of great public importance, we certify the following issue for possible consideration by the Florida Supreme Court:
*487 MAY THE FLORIDA PATIENT’S COMPENSATION FUND MAINTAIN AN ACTION FOR INDEMNITY AGAINST A NEGLIGENT EMPLOYEE OF A HOSPITAL MEMBER OF THE FUND ON WHOSE BEHALF THE FUND HAS PAID A CLAIM PREDICATED SOLELY UPON THE EMPLOYEE’S NEGLIGENCE?
GUNTHER and STONE, JJ., concur.

. In 1982 the words "limitation of liability” were replaced by the word "coverage.” The change of language does not seem to evince an intent to cbange the status of hospital employees under the statute.