KOGAN, Justice.
The Fourth District Court of Appeal has certified the following question as one of great public importance:
MAY THE FLORIDA PATIENT’S COMPENSATION FUND MAINTAIN AN ACTION FOR INDEMNITY AGAINST A NEGLIGENT EMPLOYEE OF A HOSPITAL MEMBER OF THE FUND ON WHOSE BEHALF THE FUND HAS PAID A CLAIM PREDICATED SOLELY UPON THE EMPLOYEE’S NEGLIGENCE?
*866 Higley v. Florida Patient’s Compensation Fund, 506 So.2d 483, 487 (Fla. 4th DCA 1987). This Court has jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution. We answer the certified question in the negative and quash the decision of the fourth district.
Sue A. Higley was employed as a nurse at Holy Cross Hospital. A complaint was filed in May, 1980, by Marion Falk against Holy Cross and the Florida Patient’s Compensation Fund (Fund) based on an incident which led to the death of the Falk’s infant child. Nurse Higley was not a named defendant in the action, but the hospital’s liability was predicated solely upon her alleged negligence during the incident.
The hospital had a $100,000 liability insurance policy with St. Paul Fire Insurance Company. In addition, the hospital was a member of the Florida Patient’s Compensation Fund which provided the hospital with unlimited coverage over and above the $100,000 provided by St. Paul.
In 1982, the Falk suit was settled before trial when the Fund agreed to pay $425,000 on the hospital’s behalf. Subsequently, the Fund filed this action against Nurse Higley and Continental Insurance Company with whom she had a $200,000 professional liability insurance policy. The Fund alleged that it was subrogated to the hospital’s right of indemnity against Higley and Continental. The defendants filed a motion for summary judgment, on the ground that section 768.54, Florida Statutes (1979), the act creating the Fund, precluded recovery by the Fund against a hospital employee whose acts were covered by it. The court denied summary judgment and found as a matter of law that Nurse Higley was not insured under the hospital’s agreement with the Fund, and that the Fund was not barred from seeking subrogation from her and her insurer. The petitioners agreed to a consent final judgment, and summary judgment was entered in favor of the Fund in the amount of coverage provided by Continental. On appeal the fourth district affirmed the trial court’s judgment and certified to this Court the question of great public importance.
Whether the Fund can bring an action for indemnity against Nurse Higley, an employee of the Fund member hospital, rests upon our interpretation of section 768.54(2)(e), Florida Statutes (1979), which reads:
The limitation of liability afforded by the fund for a participating hospital or ambulatory surgical center shall apply to the officers, trustees, volunteer workers, trainees, committee members (including physicians, osteopaths, podiatrists, and dentists), and employees of the hospital or ambulatory surgical center, other than employed physicians licensed under chapter 458, physician’s assistants licensed under chapter 458, osteopaths licensed under chapter 459, dentists licensed under chapter 466, and podiatrists licensed under chapter 461. However, the limitation of liability afforded by the fund for a participating hospital shall apply to house physicians, interns, employed physicians in a resident training program, or physicians performing purely administrative duties for the participating hospitals other than the treatment of patients. This limitation of liability shall apply to the hospital or ambulatory surgical center and those included in this subsection as one health care provider (emphasis added).
We find the meaning of the statute is clear and unambiguous and that the emphasized portion reflects the legislature’s desire for the Fund’s coverage to apply to all employees of the participating hospital or ambulatory surgical center. Furthermore, this interpretation is thoroughly consistent with the legislature’s intent to tailor the statute to offset the spiraling malpractice crisis.
The respondents argue that the statute creating the Fund makes coverage available to “health care providers” as defined in section 768.54(l)(b), Florida Statutes (1979). They argue that nurses are not included in the definition of “health care provider;” and, therefore, Nurse Higley is not covered by the Fund. Section 768.-54(l)(b) provides:
“Health care provider” means any: 1. Hospital licensed under chapter 395.
*867 2. Physician licensed, or physician’s assistant certified, under chapter 458.
3. Osteopath licensed under chapter 459.
4. Podiatrist licensed under chapter 461.
5. Health maintenance organization certificated under part II of chapter 641.
6. Ambulatory surgical center licensed under chapter 395.
7. “Other medical facility” as defined in paragraph (c).
8. Professional association, partnership, corporation, joint venture, or other association by the individuals set forth in subparagraphs 2., 3., and 4. for professional activity.
We do not take issue with whether nurses or other employees are included within the definition of “health care provider” under subsection (1). Instead, section 768.54(2)(e) is the proper provision for determining which parties are afforded coverage by the Fund.* Further, the language of this provision clearly includes a participating hospital’s employees, such as Nurse Higley. Thus, we find that Nurse Higley, as an employee of Fund member Holy Cross Hospital, is covered under section 768.54 of the Florida Statutes.
The Fund also argues that having settled the claim on behalf of the hospital, it may in turn be subrogated to the hospital’s right of indemnity from Nurse Higley. We need not consider this argument since we determined that Nurse Higley is covered by the Fund. Because she is covered by the Fund, the subrogation action is moot. The Fund is precluded from seeking indemnity from her “based on the premise that an insurance company cannot sue its own insured for indemnity.” Metropolitan Property & Life Ins. Co. v. Chicago Ins. Co., 479 So.2d 114, 116 (Fla.1985); see also Allstate Ins. Co. v. Fowler, 480 So.2d 1287 (Fla.1985); Marina Del Americana, Inc. v. Miller, 330 So.2d 164 (Fla. 4th DCA 1976).
The purpose of the Fund is defeated if the Fund can sue one of its insureds. As we stated in Florida Patient’s Compensation Fund v. Von Stetina, 474 So.2d 783 (Fla.1985), the reason for the creation of the Fund was to provide medical malpractice protection to the physicians and hospitals who join it, as well as to provide a method of payment to medical malpractice plaintiffs. We further recognized that the legislature created the Fund in response to the compelling social problems associated with the insurance crisis, including exorbitant premiums for professional liability insurance, the availability of insurance and the resulting threat to the quality of health care services in Florida. Id. at 788. See also ch. 76-260, Laws of Fla.
If employees such as Nurse Higley, volunteer workers, trainees and others routinely in direct contact with patients are subject to indemnification action by the Fund, they would be required to obtain liability insurance to protect themselves. Moreover, in light of the recent trend in the insurance industry, the premiums for that insurance would likely increase dramatically. Higher insurance premiums could impose an economic burden on these workers who are typically either uncompensated or paid at a modest level for their efforts. This burden would then be placed on the hospital by requests for paid liability insurance coverage or higher salaries for the workers in order for them to continue serving the hospital. This result would only add to the vicious circle that already plagues the professional liability insurance crisis.
The legislature has expressed the policy of this state to combat the professional liability insurance crisis by enacting section 768.54 which created the Florida Patient’s Compensation Fund. We are bound by the plain and unambiguous language of that statute which includes “employees” within the scope of the Fund’s coverage. To hold otherwise would be contrary to the language of the statute and would defeat the policy reasons behind it.
Accordingly, we answer the certified question in the negative and quash the *868 decision of the Fourth District Court of Appeal.
It is so ordered.
McDonald, C.J., and OVERTON, SHAW, BARKETT and GRIMES, JJ., concur.
EHRLICH, J., concurs in result only.

 Indeed, a subsequent revision of this statute substituted the term "coverage” for "limitation of liability.” Ch. 82-391, Laws of Fla.