ERVIN, Judge.
This is an appeal from a judgment for damages entered against the defendants/appellants in a medical malpractice action. We affirm as to all points raised.
On October 4, 1979, at 8:33 p.m., Baker and Allen, paramedics employed by appellant Tallahassee Memorial Regional Medical Center (TMRMC), were called to the home of five-year-old Sheronda Meeks. The paramedics determined that no emergency health care was needed and did not transport Sheronda to the hospital; neither did they consult with a physician about her condition. Sheronda died during the night of congestive heart failure. A jury verdict resulted in a final judgment in the approximate amount of $248,000.
Appellants raise four points on appeal. First, appellants argue that the trial court erred in overruling their objection to the testimony of Dr. Ketchum, a pathologist, concerning the decedent’s pre-death symptoms, on the ground that Dr. Ket-chum was not qualified to express an opinion in this regard. Dr. Ketchum testified on direct examination that a patient could possibly suffer pain, shortness of breath, vomiting, fever, and rapid heart beat associated with a cardiac problem. On cross-examination, Dr. Ketchum was asked whether he would defer to a cardiologist as to the pre-death symptoms in this case. Dr. Ketchum responded: “May I explain what we’re doing, to try to — We’re trying to determine the cause of death. I can’t go *772 into symptoms prior to death, whether or not they had pain or this or that or the other thing.” To buttress their argument that Dr. Ketchum was not qualified to discuss pre-death symptoms, appellants rely on the above statement, arguing that this statement amounts to an admission by Dr. Ketchum that he is not qualified to testify. However, his explanation, when read in context with Dr. Ketchum’s other testimony, cannot fairly be understood to mean that Dr. Ketchum regards himself as unqualified. Rather, the statement clarifies the immediately preceding one: “May I explain what we’re doing, to try to — We’re trying to determine the cause of death.” Dr. Ketchum was merely clarifying that, as a medical examiner performing an autopsy, he did not consider Sheronda’s pre-death symptoms in determining the cause of death. In fact, he testified that he had no personal knowledge of Sheronda’s pre-death symptoms, because Sheronda was DOA (dead on arrival); therefore, his examination was limited to gross and microscopic findings. We therefore agree that the trial judge correctly determined that the testimony objected to by the appellants was not beyond the expertise of a medical doctor who is a pathologist, and was therefore admissible.
In the absence of a clear showing of error, a trial judge’s determination of admissibility should not be disturbed on review. Buchman v. Seaboard Coast Line R.R. Co., 381 So.2d 229, 230 (Fla.1980). There are two elements to be considered when admitting expert testimony: the subject must be beyond the common understanding of the average layman, and the witness must have such knowledge as “will probably aid the trier of facts in its search for truth.” Id. Clearly these two criteria were met in the instant case. Appellant relies upon several cases which stand for the proposition that once an expert testifies that he or she is not qualified, it is error to admit the opinion. See, e.g., Machado v. Foreign Trade, Inc., 478 So.2d 405 (Fla. 3d DCA 1985), disapproved on other grounds, Cheek v. McGowan Elec. Supply Co., 511 So.2d 977 (Fla.1987); Warriner v. Doug Tower, Inc., 180 So.2d 384 (Fla. 3d DCA 1965), cert. denied, 192 So.2d 493 (1966), cert. denied, 386 U.S. 999, 87 S.Ct. 1321, 18 L.Ed.2d 349 (1967). Nevertheless, these cases are factually distinguishable from the one at bar, because Dr. Ketchum did not testify that he was not qualified to testify regarding pre-death symptoms. Obviously, due to his education and experience, a pathologist is qualified to testify to more than merely what he directly observes on autopsy, and can properly opine regarding events preceding death. See Johnson v. State, 423 So.2d 614 (Fla. 1st DCA 1982). Moreover, where reasonable people can differ as to the propriety of the action taken by the trial court, it cannot be said that the trial court abused its discretion. Canakaris v. Canakaris, 382 So. 2d 1197,1203 (Fla.1980). Abuse exists only where no reasonable person would take the view adopted by the trial court. Id. Certainly, that is not the situation here. Because the trial court did not abuse its discretion in permitting the testimony of Dr. Ketchum to be admitted, its ruling as to the first issue is affirmed.
Next, appellants argue that the trial court erred in permitting the use of appellant Baker’s incident report for impeachment purposes. Paramedic Baker testified at trial that no one had informed her of Sheronda’s heart murmur. She testified that she had made a misstatement on the “run report” when she wrote, “Doctor told them [the family] patient had ‘heart murmur and heart beats too fast.’ ” For the pujóse of impeaching her testimony, ap-pellee asked Baker whether she had written an incident report the following day and made the same mistake when she stated therein: “We asked her [Sheronda’s] mother if the doctor could have said that the patient had a heart murmur, and she replied ‘Yes.’ ” The incident report itself was never introduced into evidence.
Appellant argues that admissibility of the incident report is controlled by Section 395.041(4), Florida Statutes, governing internal risk management programs, which provides that incident reports are discoverable, but not admissible. Appellee, on the other hand, argues that the controlling *773 statute is Section 401.30(3), Florida Statutes, dealing specifically with emergency medical services, which provides that records of emergency calls may be disclosed in civil or criminal actions, unless otherwise prohibited by law. We believe that the trial judge correctly determined that these two statutes must be read together. Both statutes are silent regarding the use of the report for impeachment purposes. Appellants rely on Johnson v. United States, 780 F.2d 902 (11th Cir.1986), where the trial court properly excluded from evidence an incident report prepared pursuant to the predecessor statute of Section 395.041, Florida Statutes. Although Johnson states in dictum that it is against the legislative intent to use incident reports in litigation, the case does not discuss the use of reports for impeachment purposes, and thus is not helpful as to the point raised.
Appellants also argue that Section 395.-041, Florida Statutes, is analogous to Section 316.066, Florida Statutes, involving automobile accident reports, which states that “[n]o such report shall be used as evidence in any trial, civil or criminal, arising out of an accident_” Although Section 316.066, Florida Statutes, provides for very limited disclosure of some information, it does not say that an automobile accident report is discoverable; thus, the plain language of this statute is essentially different from section 395.041. We therefore agree that the report can be used for the purpose of impeachment.
Third, appellants argue that the trial court erred in denying TMRMC’s motion for directed verdict on Count II of the complaint, which alleged affirmative negligence by TMRMC in failing to properly supervise, train, and instruct the paramedics. As there was competent, substantial evidence that TMRMC deviated from the 1979 standard of care in training and supervising its paramedics, the trial court properly denied the motion for directed verdict. Dr. Pararo, TMRMC’s director of emergency medical services, testified that there was no written procedure on how to take a history or how to distinguish between an emergency and non-emergency situations. Nor was there any written distinction between taking a child’s and an adult’s vital signs. According to Dr. Para-ro, TMRMC depended upon the paramedics’ prior schooling and experience gained on the job to learn these things. Appellant’s expert, Dr. Lee, testified that there were a few national standards on paramedic training programs set up by the United States Department of Transportation, but that the situation varied from state to state. Doctors Lee and Tabb testified that the local director of emergency services was responsible for developing procedures. In fact, Dr. Tabb stated that TMRMC deviated from the standard of care by not having established such written procedures. We agree with the trial court that there was sufficient testimony on this issue to send the case to the jury.
Appellants’ final argument is that the trial court erred in denying their motion (filed following the entry of the verdict against them) to limit their liability to no more than $100,000, on the ground that because they were members of the Florida Patient’s Compensation Fund, which was not joined as a party defendant, the plaintiffs were limited in their recovery to no more than $100,000, as provided for in Section 768.54(2)(b), Florida Statutes (1979). We agree that the trial court properly denied appellants’ motion.
Section 768.54(2)(a) and (b), Florida Statutes (1979), provides in pertinent part:
768.54. Limitation of liability and patient’s compensation fund.
* * * * * *
(2) LIMITATION OF LIABILITY.
(a) All hospitals shall, unless exempted under paragraph (c), and all health care providers other than hospitals may pay the yearly fee and assessment or, in cases in which such hospital or health care provider joined the fund after the fiscal year had begun, a prorated assessment into the fund pursuant to subsection (3).
(b) A health care provider shall not be liable for an amount in excess of $100,-000 per claim or $500,000 per occurrence *774 for claims covered under subsection (3) if the health care provider had paid the fees required pursuant to subsection (3) for the year in which the incident occurred for which the claim is filed, and an adequate defense for the fund is provided, and pays at least the initial $100,-000 or the maximum limit of the underlying coverage maintained by the health care provider on the date when the incident occurred for which the claim is filed, whichever is greater, of any settlement or judgment against the health care provider for the claim in accordance with paragraph (3)(e). A health care provider may have the necessary funds available for payment when due, or an adequate defense for the fund may be provided by the following:
# # * * * ⅜<
(e) The limitation of liability afforded by the fund for a participating hospital or ambulatory surgical center shall apply to the officers, trustees.... However, the limitation of liability afforded by the fund for a participating hospital shall apply to house physicians, interns, employed physicians in a resident training program, or physicians performing purely administrative duties for the participating hospitals other than the treatment of patients. This limitation of liability shall apply to the hospital or ambulatory surgical center and those included in this subsection as one health care provider. (Emphasis added.)
(3) PATIENT’S COMPENSATION FUND.
(a) The fund. — There is created a “Florida Patient’s Compensation Fund” for the purpose of paying that portion of any claim arising out of the rendering of or failure to render medical care or services, or arising out of activities of committees, for health care providers.... The fund shall be liable only for payment of claims against health care providers who are in compliance with the provisions of paragraph (2)(b), of reasonable and necessary expenses incurred in the payment of claims, and of fund administrative expenses.
This statute is one which describes the proper relationship between the fund and members of the fund. It is a statute in derogation of the common law — as a consequence it must be construed strictly. The limitation of liability provided in this section is clearly, by the express terms of subsection (2)(e), a limitation afforded by the fund to a participating hospital. It is not a limitation of liability provided to the fund or the participating hospital vis-a-vis an injured plaintiff. In other words, it is a limitation between the parties to the contract described in Chapter 768, Florida Statutes.
This same statute provides, in subsection (3)(e):
(e) Claims Procedures.
1. Any person may file an action against a participating health care provider for damages covered under the fund, except that the person filing the claim shall not recover against the fund unless the fund was named as a defendant in the suit.
(Emphasis added.)
By the express terms of this provision, joinder of the fund is permissive. One might argue from reading only section 768.54(2)(b), that in order for a plaintiff to recover an amount in excess of $100,000, the plaintiff is required to join the fund as a party. However, any such construction is belied by other provisions of the statute, particularly subsection (2)(e) thereof, and subsection (3)(e), specifically referenced in subsection (2)(b). It is clear therefore, from an examination of section 768.54 in its entirety, that the limitation referred to in subsection (2)(e) is a limitation vis-a-vis the fund, for those health care providers who have complied with the requirements of the statute and thereby have become entitled to the benefits of the fund. Because section 768.54 describes the proper relationship between the fund and participating members, it would obviously be wise for a participating member, who desires to limit his individual liability to the amount statutorily specified, to join the fund as a party in order for the fund to provide coverage in excess of the limitation provided; but such *775 limitation clearly has no applicability to a plaintiffs right to recover a judgment in excess thereof from a participating member, notwithstanding the plaintiff’s failure to join the fund as a party defendant.
We find nothing in any of the Florida Supreme Court decisions construing section 768.54 suggesting a contrary result. For example, in Florida Patient’s Compensation Fund v. Von Stetina, 474 So.2d 783, 789 (Fla.1985), the court, in upholding the constitutionality of Section 768.54(3)(e)3, Florida Statutes (1981), particularly the provisions concerning transfer of liability from a health care provider to the fund for awards in excess of $100,000, was not asked to address the issue of the limitation of liability per se. Neither is there anything in Von Stetina implying that it is the plaintiffs obligation to make the fund a party to the action, or that a plaintiff is limited to a $100,000 judgment against a health care provider who may happen to be a fund member. Similarly, in Taddiken v. Florida Patient’s Compensation Fund, 478 So.2d 1058, 1060 (Fla.1985), the issue before the court was simply whether the two-year statute of limitations applies to both the fund and the health care provider, and not whether a plaintiff is limited to recovering a judgment of no more than $100,000 against a health care provider. Again, in Florida Patient’s Compensation Fund v. Tillman, 487 So.2d 1032 (Fla.1986),[1] its decision approving certain provisions of section 768.54, the court was not confronted with the question of whether the $100,000 limitation applies to a plaintiffs action against a health care provider.
We acknowledge that there is language in the Third District’s opinion in Mercy Hosp., Inc. v. Menendez, 371 So.2d 1077, 1079 (Fla. 3d DCA 1979), appeal dismissed and cert. denied 383 So.2d 1198 (1980), stating that an injured plaintiff must join the fund if he or she seeks to recover a judgment in excess of the statutory limits: “We hold that the plaintiffs have the burden of making the Fund a party in any suit where recovery is sought against a health care provider in excess of $100,000.00_” In our judgment this statement is erroneous because, as we previously stated, section 768.54(2)(b) must be read in connection with subsection (2)(e), which clearly evidences that the limitation of liability provided in subsection (2)(b) is one between the parties to the contract. In other words, the statute describes an arrangement between the fund and health care providers, in order for the providers who are fund members to avail themselves of the limitation of no more than $100,000, and for the fund to supply coverage for any amount in excess thereof. Nonetheless, we certify our conflict with the Menendez decision.
Appellants also rely upon the recently decided opinion in Higley v. Florida Patient’s Compensation Fund, 525 So.2d 865 (Fla.1988), in support of its limitation of liability position. However, if anything, Higley supports the appellee’s argument, rather than appellants’, because Higley was directed to the issue of the classes of persons who are afforded coverage by the fund (rather than those whose liability is limited). See Id. at 866. Indeed, as the case reflects, a subsequent revision of this statute substituted the term “coverage” for “limitation of liability.” Id. at 867 fn. 1. Thus, while the appellants Baker and Allen are covered by the fund as employees of the hospital — if the hospital is properly a member of the fund — nevertheless, this contractual benefit to them in no way affects the rights of the plaintiffs/appellees herein.
Finally, even if Section 768.54(2)(e), Florida Statutes, conceivably has the effect that appellants argue, so as to shield them from liability in excess of $100,000, in our judgment it was appellants’ obligation — not appellees’ — to raise such argument as an affirmative defense in their answer to plaintiffs’ pleading, and their failure to assert it timely waives their right to raise it following the rendition of the verdict. See
*776 Jakobsen v. Massachusetts Port Auth., 520 F.2d 810 (1st Cir.1975), wherein the court observed that the ordinary consequence of failing to plead an affirmative defense is its waiver and- exclusion from the case. “Practicality demands that a defense of this nature [statutory limitation of liability] be asserted early, so that it can be sorted out before a jury is impaneled, to avoid waste of judicial and litigant resources.” Id. at 813.
For all of the above reasons, the judgment below is AFFIRMED.
WENTWORTH, J., concurs.
BOOTH, j., dissents.

. The court in Tillman, as it had in Von Stetina, upheld the constitutionality of the limitation of liability provisions of the statute. In so doing, however, it never addressed any question regarding whether those provisions were a limitation of the plaintiffs right to recover a judgment in excess thereof if the fund were not joined in the action.