549 So.2d 1081 (1989)
Alex GUP, M.D. and the Medical Center Clinic, Appellants,
v.
Katherine COOK and Ernest Cook, Wife and Husband, Appellees.
No. BS-490.
District Court of Appeal of Florida, First District.
September 20, 1989.
*1082 James M. Wilson of Harrell, Wiltshire, Swearingen, Wilson & Harrell, P.A., Pensacola, and Patrice A. Talisman of Daniels & Hicks, P.A., Miami, for appellants.
Marguerite H. Davis of Katz, Kutter, Haigler, Alderman, Eaton & Davis, P.A., Tallahassee, for Florida Patients' Compensation Fund, amicus curiae on behalf of appellants.
William C. Baker, Jr., Pensacola, for appellees.
NIMMONS, Judge.
This is an appeal from a final judgment awarding appellees $850,000 in damages in a medical malpractice action. We affirm in part, reverse in part, and remand with directions.
In 1977, Katherine Cook, a 24-year-old mother, was pregnant with her third child. Her obstetrician was Dr. Thomas Wyatt, one of the doctors at the Medical Center Clinic (Clinic). Mrs. Cook first visited Dr. Wyatt on September 28, 1977. During this pregnancy, Mrs. Cook experienced some urinary problems and discovered blood in her urine. Over the ensuing months, upon Dr. Wyatt's recommendation, Mrs. Cook was examined by various urologists at the Clinic, including Dr. Alex Gup.[1] Dr. Gup saw Mrs. Cook on November 8 and December 17, 1977. The date of Mrs. Cook's last visit with Dr. Wyatt was May 15, 1978.
Mrs. Cook had no further urinary problems until August 1979. At that time she once again discovered blood in her urine. She visited a urologist who, after performing a cystoscopy and an infusion pyelogram, diagnosed her as having a tumor in her bladder. She then went to see a second urologist, Dr. Martin, who confirmed this diagnosis. On September 14, 1979, Mrs. Cook underwent surgery for radical hysterectomy and cystectomy. This surgery involved removal of her bladder, uterus, right fallopian tube, and ovary.
Mrs. Cook and her husband sued the Clinic and Dr. Gup for negligence in failing to perform the necessary diagnostic tests from September 28, 1977 through May 15, 1978 in order to identify Mrs. Cook's cancer. According to the plaintiffs, proper testing at the time Dr. Gup and the Clinic were treating Mrs. Cook would have enabled the doctors to effect a cure or sufficiently retard the growth of the tumor so as to extend Mrs. Cook's life expectancy, and would have avoided the necessity of *1083 radical surgery to remove it. The jury found that the Clinic, Dr. Gup, and Mrs. Cook were negligent and assessed responsibility as follows:

 Alex Gup, M.D. 15%
 Medical Center Clinic by its Agents and Employees 70%
 other than Alex Gup, M.D.
 Katherine Cook 15%

The verdict form reflected the jury's determination of damages as follows:

 Future Award
 Reduced to
 Present
 Past Future Value
 KATHERINE COOK
 For Medical Expenses $-0- $500,000
 For Pain and suffering $200,000 $300,000

The verdict form also reflected the jury's finding that the amount awarded for future damages was intended to provide compensation for a period of 45 years.
After the verdict was rendered, the Clinic and Dr. Gup moved to limit any judgment entered against them to $100,000 each in accordance with Section 768.54(2)(b), Florida Statutes (1977), which provided as follows:
(b) A health care provider shall not be liable for an amount in excess of $100,000 per claim for claims covered under subsection (3) in this state if, at the time the incident giving rise to the cause of the claim occurred, the health care provider:
1. Had:
a. Posted bond in the amount of $100,000 per claim;
b. Proved financial responsibility in the amount of $100,000 per claim to the satisfaction of the board of governors of the fund through the establishment of an appropriate escrow account;

c. Obtained medical malpractice insurance in the amount of $100,000 or more per claim from private insurers or the Joint Underwriting Association established under subsection 627.351(7); or
d. Obtained self-insurance as provided in s. 627.357, providing coverage in an amount of $100,000 or more per claim ... (e.s.)
This motion was grounded on the appellants' membership in the Florida Patients' Compensation Fund (Fund) for the relevant time period of July 1, 1977 to June 30, 1978. The appellees contended that the Clinic and Dr. Gup were not entitled to the requested limitation of judgment because the statute required an escrow account in the amount of $100,000 per claim pending at the time the incident giving rise to the cause of the claim occurred and that, at the relevant time, there were three claims pending. The trial court construed the statute in accordance with the appellees' argument and denied the motion to limit judgment.
Two issues have been raised for our consideration:
I. Whether the lower court erred in entering judgment for $500,000 in future medical expenses; and
II. Whether the trial court erred in refusing to limit the judgment against Dr. Gup and the Medical Center Clinic to $100,000 each.
As to issue I, appellants argue that they are entitled to a new trial on damages because: (1) the verdict form was inconsistent; and (2) the $500,000 award for future medical expenses is excessive in that it is contrary to the manifest weight of the evidence.
Appellants maintain that the verdict form was inconsistent in that the jury's award of "-$0-" for future medical expenses is inconsistent with its award of $500,000 for "future medical expenses reduced to present value." Such inconsistency, appellants claim, demonstrates that the jury was confused and therefore appellants are entitled to a new trial on damages. While appellants' argument appears to have merit, they are barred from raising this argument on appeal because they failed to object to such inconsistency at the time the verdict was rendered. When the verdict was returned, it was read by the clerk. At that time, the jury was polled and each of the jurors announced that it was their verdict. Counsel for the respective parties then approached the bench and examined the verdict. There was no objection raised at that time.
The law is clear that, where no objection is made to a defective verdict form or inconsistent verdict before the jury is discharged, any defect or inconsistency is *1084 waived. Higbee v. Dorigo, 66 So.2d 684 (Fla. 1953); North American Catamaran Racing Association Inc. v. McCollister, 480 So.2d 669 (Fla. 5th DCA 1985); Department of Transportation v. Denmark, 366 So.2d 476 (Fla. 4th DCA 1979). The rationale, of course, for such a rule is that "there would be very little fairness in reversing the plaintiff's judgment because of an inconsistency in the verdicts which could have been corrected in virtually no time at all by a resubmission of the cause to the jury had either of the appellants raised the matter before the jury was discharged." Denmark, 366 So.2d at 478.
We do agree, however, with appellants that the $500,000 award for future medical expenses is excessive. The evidence in this case is simply insufficient to support such an award. While the damages to be awarded for personal injuries are primarily within the province of the jury, a new trial will be granted upon a showing that: (1) no reasonable relation exists between the verdict and the damages proved; (2) the award appears to be excessive or arbitrary; or (3) the amount is such as to shock the judicial conscience. Ragg v. Hurd, 60 So.2d 673 (Fla. 1952); Sproule v. Nelson, 81 So.2d 478 (Fla. 1955); S.A. Freel Distributing Co., Inc., v. Lenox, 147 Fla. 550, 3 So.2d 157 (1941).
In view of the evidence presented on future medical expenses, the award of $500,000 bears no reasonable relation to the future damages actually proven, is clearly excessive, and indeed "shocks the judicial conscience." As appellants correctly point out, the only evidence presented as to the cost of future medical expenses included: (1) an operation at a cost of $7,500 to $10,000; (2) annual medical care at a cost of $500.00 to $750.00 per year; and (3) disposable bags at a cost of $25.00 per month, or $300.00 per year. Annual medical care plus a year's supply of disposable bags totals $1,050 per year. The jury awarded future damages for 45 years. $1,050 per year for 45 years totals $47,250. Adding $10,000 for the operation brings the sum to $57,250, before reduction to present value.
Appellees argue that the discrepancy between the damages actually proven and those damages awarded is supported by Dr. Prout's testimony to the effect that Mrs. Cook may incur additional expenses based on future medical complications associated with bladder infection. In opining that Mrs. Cook would sustain future medical expenses of $500.00 to $750.00 per year, Dr. Prout testified as follows:
It may be less; it may be more. She may suffer the  with having her urinary stream diverted, and these things are not uncommon; like chronic infection, stone formation, intestinal obstruction, a number of things that might happen within medical probability....
There is, because of the setting in which this operation is done, and in most patients there are not a lot of good valuable data on a long-term basis, so it's  in a sense it's  it's speculative. We know with children it's a very bad setup, and we know that those children are headed for real difficulties. Adults seem to manage infections better than children, and so I really don't know; but I think I have given you what I would consider to be the minimum.
Such speculative testimony is certainly not sufficient to account for the $500,000 future medical expense award involved in the present case. Dr. Prout's opinion as to Mrs. Cook's future difficulties was merely couched in terms of "possibilities," which are simply not probative of Mrs. Cook's future damages. See Florida Standard Jury Instructions (Civil) 6.1(b) and 6.2(c)[2]; *1085 Crosby v. Fleming & Sons, Inc., 447 So.2d 347 (Fla. 1st DCA 1984) (trial court affirmed in awarding new trial following jury verdict in personal injury action in which the treating physician was allowed to testify in a speculative fashion concerning possible future medical problems  held such testimony not probative of future damages); DeAlmeida v. Graham, 524 So.2d 666 (Fla. 4th DCA 1987) (error to award damages for future medical expenses in absence of evidence in the record from which the jury could, with reasonable certainty, determine the amount of medical expense appellee would be likely to incur in the future).
While there is certainly evidence in the record from which the jury could infer the need for future medical treatment, the evidence is insufficient to support the jury's $500,000 award for future medical expenses. This award does not bear any relation to the amount in future medical expenses actually proven at trial, and is clearly arbitrary.
Accordingly, we conclude that the evidence presented to the jury will not support an award of future medical expenses in excess of $57,250. We therefore vacate the $500,000 award for future medical expenses and remand for a remittitur to $57,250 or a new trial solely on this issue at the appellees' option.
Turning to issue II, the trial court, as earlier noted, denied the appellants' motion to limit judgment on the ground that the appellants had failed to satisfy the provisions of Section 768.54(2)(b)1.b. requiring proof of "financial responsibility in the amount of $100,000 per claim ... through the establishment of an appropriate escrow account." During the applicable Fund year from July 1, 1977 to June 30, 1978, the evidence showed that at least three claims were pending against appellants. The trial court reasoned that, under the above subsection, appellants were required to maintain an escrow account in the amount of $100,000 per claim. Since three claims were pending against the appellants during the pertinent year and only $100,000 had been deposited, the limitation motion  according to the trial court  must be denied.
We need not decide whether the trial court's above rationale was correct because the court's denial of the limitation motion is affirmable for another, more basic, reason under the recent holding of this court in Tallahassee Memorial Regional Medical Center v. Meeks, 543 So.2d 770 (Fla. 1st DCA 1989). Meeks held that the limitation provisions of subsection (2)(b) were applicable only to the parties to the Fund contract, i.e., the health care provider and the Fund, and did not preclude the plaintiff from recovering the excess over the $100,000 figure. Moreover, Meeks held that it is a misconstruction of Section 768.54(3)(e)[3] to require that the plaintiff  as contrasted with the health care provider  join the Fund as a party defendant. 543 So.2d at 774. Meeks stated:
Section 768.54(2)(b) must be read in connection with subsection (2)(e), which clearly evidences that the limitation of liability provided in subsection (2)(b) is one between the parties to the contract. In other words, the statute describes an arrangement between the fund and health care providers, in order for the providers who are fund members to avail themselves of the limitation of no more than $100,000, and for the fund to supply coverage for any amount in excess thereof.
543 So.2d at 775. Meeks certified conflict with our sister court's opinion in Mercy Hospital, Inc. v. Menendez, 371 So.2d 1077, 1079 (Fla. 3rd DCA 1979), wherein the Third District held that "the plaintiffs have the burden of making the Fund a party in any suit where recovery is sought against a health care provider in excess of $100,000.00... ." We likewise certify conflict with Menendez.
*1086 Accordingly, we affirm as to the order denying appellants' motion to limit the judgment. However, we vacate the $500,000 award for future medical expenses and remand for a remittitur to $57,250 as to that element of damages, or a new trial solely on the issue of future medical expenses, at the appellees' option.
SMITH, J., concurs.
BOOTH, J., concurs in part and dissents in part with written opinion.
BOOTH, Judge, concurring in part and dissenting in part.
The majority correctly points out that the verdict is inconsistent and, as to future medical, is excessive. Based on those determinations, the cause should be remanded for a new trial on damages. This court is not in a position to evaluate the evidence and determine what amount of damages the jury could or should have awarded.
On Issue II, I would hold that (a) the plaintiff has the obligation to join the Fund, as held in the Menendez case, supra, and (b) that the Fund's interpretation of the escrow account provision is consistent with the statute and should control.
NOTES
[1] From the record, it appears that these physicians, along with a number of others, operated the Clinic via a partnership agreement.
[2] you find for (defendant), you will not consider the matter of damages. But, if you find for (claimant), you should award (claimant) an amount of money that the greater weight of the evidence shows will fairly and adequately compensate him for such [loss] [injury] [or] [damage] including any such damage as (claimant) is reasonably certain to [incur] [experience] in the future. You shall consider the following elements:
* * * * * *
Medical expenses: The reasonable [value] [or] [expense] of [hospitalization and] medical [and nursing] care and treatment necessarily or reasonably obtained by (claimant) in the past [or to be so obtained in the future]. (e.s.)
[3] Section 768.54(3)(e), Florida Statutes (1977) provides, in pertinent part:

(e) Claims procedures. 
1. Any person may file an action against a participating health care provider for damages covered under the fund, except that the person filing the claim shall not recover against the fund ... unless the fund was named as a defendant in the suit.