577 So.2d 669 (1991)
K.C., a Juvenile, B.C. and R.C., Appellants,
v.
A.P., a Minor Child, by and through His Parents and Natural Guardians, et al., Appellees.
Nos. 89-2428, 89-2444.
District Court of Appeal of Florida, Third District.
April 2, 1991.
Rehearing Denied April 26, 1991.
*670 Walton, Lantaff, Schroeder & Carson and Robert L. Teitler, Miami, for appellants B.C. and R.C.
Ruiz & Chesrow and George W. Chesrow, Coral Gables, for appellant K.C.
Daniels & Hicks and Robert S. Glazier, Miami, for appellees.
Before BASKIN, JORGENSON and GODERICH, JJ.
PER CURIAM.
The defendants, R.C., B.C. [hereinafter collectively referred to as K.C.'s parents] and K.C. appeal from an adverse final judgment entered pursuant to a jury verdict. We reverse in part, affirm in part, and remand for further proceedings.
The plaintiffs, A.P., a minor, and his parents brought an action against K.C.'s parents and K.C., a minor, based upon the alleged sexual abuse committed by K.C. upon A.P. The complaint stated a cause of action against K.C. for negligence and against K.C.'s parents for negligent supervision.
The testimony at trial revealed that A.P. informed his father that K.C. was sexually abusing him. A.P.'s father immediately confronted K.C.'s father regarding the allegation. Upon becoming aware of what was happening, K.C.'s father confronted his son with the allegations. It was then that K.C. told his father that he had been sexually abused by an older boy when he was a young child.
Dr. Raymond C. Armstrong, A.P.'s examining psychologist, testified that neither K.C.'s parents nor A.P.'s parents could have anticipated the specific abusive acts which occurred. Additionally, Dr. Eli H. Neuberger, testified that K.C.'s parents could not have predicted that their minor child was sexually abusing another child unless they knew that their child was sexually abused as a young boy.[1] Dr. Warren Slanger, K.C.'s court-appointed psychiatrist, testified that it is common for children who engage in sexual encounters to keep such acts a secret.
There was evidence presented that past medical expenses were approximately $4,000.00. Additionally, there was evidence as to A.P.'s future medical expenses. Dr. Slanger testified that future medical expenses would range from $49,000.00 to $51,000.00. Mr. Thomas Norris, A.P.'s psychologist, testified that future medical care for A.P. would be "somewhere in the 20 thousands." The plaintiffs' interrogatories stated that they expected future medical expenses would be $25,000.00.
The jury found in favor of the plaintiffs and awarded A.P. $250,000.00 in non-economic damages and A.P.'s parents $150,000.00 for past and future medical expenses.[2] The defendants filed several post trial motions which were not heard by the trial judge because he retired. The successor judge denied the motions because as the successor judge she could not properly rule on the merits of said motions. The defendants also filed a motion to reduce the judgment due to collateral source payments, however, the successor judge has not ruled on this motion.
K.C.'s parents contend that the trial court erred in failing to enter a directed verdict in their favor on the negligent supervision count. We agree.
*671 "[A] parent is not liable for the tort of his minor child because of the mere fact of his paternity." Gissen v. Goodwill, 80 So.2d 701, 703 (Fla. 1955). There are, however, four exceptions:
(1) where the parent entrusts the child with an instrumentality which, because of the child's lack of age, judgment, or experience, may become a source of danger to others; (2) where the child committing the tort is acting as the servant or agent of its parents; (3) where the parent consents, directs, or sanctions the wrongdoing; and (4) where the parent fails to exercise control over the minor child although the parent knows or with due care should know that injury to another is possible.
Snow v. Nelson, 475 So.2d 225, 226 (Fla. 1985); see also Gissen, 80 So.2d at 703.
The "exception" at issue in the present case is number four. For a parent to be liable under this exception, the parent has to know or should know "that the child had a habit of engaging in [the] particular act or course of conduct which led to the plaintiff's injury." Snow, 475 So.2d at 226 (emphasis added). In the instant case, there was absolutely no evidence which indicated that K.C.'s parents knew that K.C. was sexually abusing A.P. Therefore, the next inquiry becomes whether K.C.'s parents should have known that K.C. had a habit of engaging in the "particular" type of conduct which led to A.P.'s injury.
As stated earlier, Dr. Neuberger testified that K.C.'s parents could not have predicted that K.C. was sexually abusing another child unless they also knew that K.C. was sexually abused as a child. There was no evidence which indicated that K.C.'s parents knew that K.C. had been sexually abused as a young boy. Moreover, Dr. Armstrong testified that K.C.'s parents could not have anticipated that their minor child was sexually abusing another child. Since there was no evidence presented to demonstrate that K.C.'s parents should have known that K.C. was sexually abusing another child, we hold that the trial court erred in failing to enter a directed verdict in K.C.'s parents' favor.
K.C. contends that the trial court erred in entering final judgment in favor of A.P.'s parents for $150,000.00 in damages for past and future medical expenses.[3] We agree.
A jury "verdict should not be disturbed on the ground of excessiveness unless it is manifestly so excessive as to shock the judicial conscience, or unless it is so excessive as to be indicative of prejudice, passion or corruption on the part of the jury, or unless it clearly appears that the jury ignored the evidence... ." Lassitter v. International Union of Operating Eng'rs, 349 So.2d 622, 627 (Fla. 1976) (citing Odoms v. Travelers Ins. Co., 339 So.2d 196 (Fla. 1976)); see also Lincoln v. Miggins, 249 So.2d 88 (Fla. 3d DCA 1971).
The evidence presented at trial as to past and future medical expenses indicate that past medical expenses were approximately $4,000.00 and that future medical expenses would not exceed $51,000.00. In view of the evidence presented, the award of $150,000.00 is clearly excessive. Therefore, the award of $150,000.00 for past and future medical expenses is vacated and remanded for a remittitur to $55,000.00. See Gup v. Cook, 549 So.2d 1081 (Fla. 1st DCA 1989).
Next, K.C. contends that the trial court erred in entering an order which reflects that K.C. is liable to both A.P. and A.P.'s parents for $400,000.00. We agree. The jury awarded $250,000.00 to A.P. for non-economic damages and awarded $150,000.00 to A.P.'s parents for past and future medical expenses. The final judgment is to be amended to reflect that K.C. is liable to A.P. in the amount of $250,000.00 and liable to A.P.'s parents in the amount of $55,000.00.[4]
Finally, K.C. contends that this cause should be remanded to the trial court for an evidentiary hearing on his motion to *672 reduce the judgment due to collateral source payments. On the other hand, the plaintiffs contend that K.C. abandoned this motion since he filed his notice of appeal prior to obtaining a ruling on the motion. We find that the motion was not abandoned and remand to the trial court for an evidentiary hearing.
In the instant case, K.C. filed several post-trial motions including a motion to reduce the judgment due to collateral source payments, a motion for new trial, and a motion for judgment in accordance with prior motion for directed verdict. In doing so, K.C. specifically requested that the successor judge not rule on the motion for new trial and the motion for judgment in accordance with prior motion for directed verdict until the trial court had an opportunity to rule on the motion to reduce the judgment due to collateral source payments. However, on September 15, 1989, the successor judge ruled on the other motions without ruling on the motion to reduce the judgment due to collateral sources. Fearing that the time to file a timely appeal would expire, K.C. filed his notice of appeal without obtaining a ruling on his motion to reduce the judgment due to collateral sources.[5] On December 15, 1989, the trial court heard K.C.'s motion to reduce the judgment due to collateral sources. At the hearing, the successor judge stated that the trial court no longer had jurisdiction over the matter since the notice of appeal had already been filed and agreed that the motion was preserved during the pendency of this appeal.
Under the circumstances, K.C. did not abandon his motion to reduce the judgment due to collateral sources. A notice of appeal must be filed within thirty days of the rendition of the final order to be reviewed. Fla.R.App.P. 9.110(b). An order is rendered when a signed written order is filed with the clerk of the lower tribunal. Fla.R. App.P. 9.020(g). However, Rule 9.020(g) also provides that the timely filing of certain motions will postpone the date of rendition until the motion has been disposed of.[6] A motion to reduce the judgment due to collateral source payments is not one of the specific motions listed, and therefore, in the instant case, the time for filing the notice of appeal commenced upon the disposition of the motion for new trial and the motion for judgment in accordance with prior motion for directed verdict.[7] Unfortunately, the defendants were not able to schedule a hearing on the motion until after the time to file a timely notice of appeal would have expired. Under the facts of this case, the defendants failure in obtaining a ruling on his motion to reduce the judgment due to the collateral source payments was beyond his control, and therefore he will not be penalized. Accordingly, this matter is remanded to the trial court for an evidentiary hearing.
Reversed in part, affirmed in part, and remanded for further proceedings.
NOTES
[1] K.C.'s parents testified that they did not know that their son had been sexually abused as a young boy.
[2] The parties stipulated that if the jury found in favor of A.P., past and future medical expenses would be awarded to A.P.'s parents. Any award to A.P. was limited to non-economic damages.
[3] This issue was also raised by K.C.'s parents, however, in light of our disposition on the prior issue, we do not need to address their remaining points raised on appeal.
[4] K.C.'s liability to A.P.'s parents is $55,000.00, instead of $150,000.00, as a result of the remittitur.
[5] K.C. filed his notice of appeal on October 13, 1989.
[6] Rule 9.020(g) provides as follows:

(g) Rendition (of an Order). The filing of a signed written order with the clerk of the lower tribunal. Where there has been filed in the lower tribunal an authorized and timely motion for new trial or rehearing, certification, to alter or amend, for judgment in accordance with prior motion for directed verdict, notwithstanding the verdict, in arrest of judgment, or a challenge to the verdict, the order shall not be deemed rendered until disposition thereof.
[7] "Motions which postpone the date of rendition have been narrowly limited to prevent deliberate delaying tactics. To postpone rendition the motion must be timely, authorized and one of those listed." Committee Notes to Rule 9.020, Florida Rules of Appellate Procedure.