478 So.2d 1058 (1985)
Joyce M. TADDIKEN, et Ux., Petitioners,
v.
FLORIDA PATIENT'S COMPENSATION FUND, Respondent.
Carlyle S. FABAL, et Ux., Petitioners,
v.
FLORIDA KEYS MEMORIAL HOSPITAL et al., Respondents.
Nos. 65690, 65730.
Supreme Court of Florida.
October 24, 1985.
Rehearing Denied December 27, 1985.
*1059 Robert M. Brake, Coral Gables, for Joyce M. Taddiken and Frank Taddiken.
David J. White of Proenza and White, Miami, for Carlyle S. Fabal and Nancy G. Fabal.
Richard B. Collins and Robert W. Goldman of Perkins and Collins, Tallahassee, for respondents.
PER CURIAM.
These consolidated cases are before us pursuant to certified questions regarding the applicability to the Florida Patient's Compensation Fund (Fund) of section 95.11(4)(b), Florida Statutes (1977), providing for a two-year statute of limitations in medical malpractice actions against "health-care providers and persons in privity with the health care provider."[1] We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
A person filing a claim against a health-care provider covered by the Fund cannot recover against the Fund unless the Fund is named as a defendant in the suit, section 768.54(3)(f)1, Florida Statutes (Supp. 1978). In both of the actions under review, the trial courts entered summary judgments in favor of the Fund when the plaintiffs attempted to join the Fund more than two years after the causes of actions against the health-care providers accrued, even though the medical malpractice actions were timely filed. In both cases the district court of appeal affirmed. Fabal v. Florida Keys Memorial Hospital, 452 So.2d 946 (Fla. 3d DCA 1984); Taddiken v. Florida Patient's Compensation Fund, 449 So.2d 956 (Fla. 3d DCA 1984). In Taddiken, the district court certified the question:
Whether a claim against the Florida Patient's Compensation Fund arises at the time of the alleged medical malpractice, rather than when judgment is entered against the tortfeasor, and is governed by the two year statute of limitations provided by Section 95.11(4)(b), Florida Statutes (1977), so that the Fund must be made or joined as a party defendant *1060 within two years after the malpractice action accrues?
Id. at 958.
Petitioners first argue that the joinder of the Fund subsequent to the expiration of the two-year statute of limitations should relate back to the filing of the initial complaint against the health care provider under McNayr v. Cranbrook Investments, Inc., 158 So.2d 129 (Fla. 1963). We disagree. McNayr was an exception to the general rule that when a complaint is amended to name a new party defendant, the amendment does not relate back and the action is not commenced as to the added defendant until the amended complaint is filed. See Fla.Jur.2d Limitations §§ 76-77 (1982). The statute in McNayr specified that the comptroller be made a party defendant to a suit in equity for reduction of an annual ad valorem tax assessment. The decision turned on the wording of that statutory requirement:
It is our opinion that the word "maintained", as used in Sec. 196.14, "No suit or proceeding shall be maintained in any court of this state for the purpose of cancelling or contesting the validity of any tax assessment or tax certificate unless the comptroller of the state be made a party to such proceedings * * *" does not prohibit the institution of an action, but, if challenged, further action is stayed pending compliance with this law. (Citations omitted; emphasis supplied.)
158 So.2d at 130. Moreover, there was no specific statutory requirement in McNayr that the comptroller be joined within the period for bringing the suit. McNayr is factually distinguishable from the case under consideration and is therefore not dispositive.
The issue, then, is whether the Fund is in privity with the health care provider, as the statute unambiguously makes those in privity with the health care provider subject to the same two-year statute of limitations. Petitioners argue that insurance companies are excepted from statutes of limitations applicable to their insured, and therefore the Fund, being similar to an insurance company, should likewise be excepted from the health care providers' two year statute. Petitioners point out that the Fund, like an insurer, inter alia, pays claims from a pool of money for that purpose. The Fund counters that, unlike an insurer, the Fund is a nonprofit entity, a peculiar creature of statute that must be joined in the lawsuit against a health care provider participating in the Fund.
The fact that the Fund is like an insurance company in some respects and unlike it in others neither makes it an insurance company nor resolves the issue of legislative intent regarding treatment of the Fund. Indeed, the legislature treats the Fund differently from the way it treats a private insurance company in a most important respect: a private insurance company may not be joined in an action against its insured, section 627.7262, Florida Statutes (Supp. 1982); Van Bibber v. Hartford Accident and Indemnity Insurance Co., 439 So.2d 880 (Fla. 1983), while the Fund must be joined in order for a claimant to recover from it, section 768.54(3)(f)1, Florida Statutes (Supp. 1978). In Florida Patient's Compensation Fund v. Von Stetina, 474 So.2d 783 (Fla. 1985), we explained the reason for the creation of the Fund as follows:
In 1975, the Florida Legislature instituted the Fund as a non-profit entity to provide medical malpractice protection to the physicians and hospitals who join it, as well as a method of payment to medical malpractice plaintiffs. See ch. 7509, Laws of Fla. The Fund provides a statutory scheme of pooling the risk of losses and placing major losses in the entity that can best spread the risk of loss as well as control the conduct of those at fault. Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d 815 (Fla. 1983), appeal dismissed, [466 U.S. 901] 104 S.Ct. 1673 [80 L.Ed.2d 149] (1984). In its preamble to the 1976 amendment, the legislature summarized its public policy findings with respect to the need for the enactment. It reads, in part, as follows:

*1061 WHEREAS, despite the responsive and responsible actions of the 1975 session of the legislature, professional liability insurance premiums for Florida physicians have continued to rise and ... such insurance, even at exorbitant rates, is becoming virtually unavailable in the voluntary private sector, and ... this insurance crisis threatens the quality of health care services in Florida ... and ... this crisis also poses a dire threat to the continuing availability of health care in our state ... and ... our present tort law/liability insurance system for medical malpractice will eventually break down . .. [and] fundamental reforms of said tort law/liability insurance system must be undertaken, and ... the continuing crisis proportions of this compelling social problem demand immediate and dramatic legislative action... .
Ch. 76-260, Laws of Fla. See also ch. 75-9, Laws of Fla.
At 788. In view of the above considerations, it is apparent that the Fund is a unique entity created by statute that is not treated as an insurance company by the legislature.
In order for the Fund to fulfill its dual purposes of protecting health care providers and compensating malpractice victims, it must be actuarially sound. The legislature may well have determined that the joinder requirement would best accomplish this end if the Fund is made a party to the action early on. The legislature requires that the Fund establish a risk management program including the following components:
1. The investigation and analysis of the frequency and causes of general categories and specific types of adverse incidents causing injury to patients;
2. The development of appropriate measures to minimize the risk of injuries and adverse incidents to patients;
3. The analysis of patient grievances which relate to patient care and the quality of medical services;
4. The development and implementation of an incident reporting system based upon the affirmative duty of all health care providers and all agents and employees of health care providers and health care facilities to report injuries and incidents; and
5. Auditing of participating health care providers to assure compliance with the provisions of the risk management program.
§ 768.54(3)(g), Fla. Stat. (Supp. 1982). The legislature could reasonably have determined that compliance with the risk management requirements, allowing the Fund both to minimize adverse incidents and to estimate upcoming expenses, is better facilitated by its joinder in medical malpractice lawsuits at the earliest possible date.
Even more significantly, timely joinder of the Fund is critical if the Fund is to protect its own interests and not have to rely on the health care providers. Under the legislative plan the liability exposure of the Fund is open ended and potentially very great, whereas that of the health care providers is relatively small. Accordingly, the statute provides that the Fund will retain its own counsel and actively defend itself. It would be illogical to permit late joinder of the defendant with the greatest stake in the outcome of the litigation after the outcome may have been largely determined. It is true, as the district court pointed out, that the Fund and health care providers have a mutuality of interest in defending the suit, but it is also true that their interests are not necessarily congruent and only the Fund can in the final analysis determine how best to protect itself.
Although pointed out by the district court in Taddiken that there is no definition of privity that can be applied in all cases, there is at least one type of privity that describes aptly the relationship between the Fund and its member health care providers: mutuality of interest. The dictionary definition includes in relevant part:

*1062 PRIVITY... . In its broadest sense, "privity" is defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right (citation omitted). Derivative interest founded on, or growing out of, contract, connection, or bond of union between parties; mutuality of interest (citation omitted).
BLACK'S LAW DICTIONARY 1079 (rev. 5th ed. 1979). Clearly there is privity between the Fund and its member health providers. We agree with the district court in Taddiken that
[in] the present case there is a mutuality of interest which exists between a health care provider and the Fund which extends to the lawsuit itself, the alleged claims of medical malpractice and the damages claimed. The very relationship which exists between the Fund member and the Fund is the underlying reason for the legislature's mandate that the Fund must be joined as a defendant in the lawsuit. To conclude otherwise and require a two-year statute of limitations for the Fund member but a four-year statute of limitations for the Fund itself would create the possibility that the litigation would be nearly concluded before the statute of limitations would bar the Fund's joinder. Burr v. Florida Patient's Compensation Fund, 447 So.2d 349 (Fla. 2d DCA 1984). Such a result would seriously impair the Fund's right to defend the case.
449 So.2d at 957-58.
We approve the decisions of the district court and hold that the Fund is in privity with its participating health care providers and is subject to the same two-year statute of limitations period.
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD and SHAW, JJ., concur.
EHRLICH, J., concurs in result only.
ADKINS, J., dissents.
NOTES
[1] Section 95.11(4)(b), Florida Statutes (1977), reads as follows:

An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued. An "action for medical malpractice" is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care. The limitation of actions within this subsection shall be limited to the healthcare provider and persons in privity with the provider of health care. In those actions covered by this paragraph in which it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury within the 4-year period, the period of limitations is extended forward 2 years from the time that the injury is discovered or should have been discovered with the exercise of due diligence, but in no event to exceed 7 years from the date the incident giving rise to the injury occurred.