560 So.2d 778 (1990)
TALLAHASSEE MEMORIAL REGIONAL MEDICAL CENTER, INC., et al., Petitioners,
v.
Sheronda A. MEEKS, etc., et al., Respondents.
No. 74408.
Supreme Court of Florida.
March 29, 1990.
Rehearing Denied May 4, 1990.
*779 Laura Beth Faragasso of Henry, Buchanan, Mick & English, P.A., Tallahassee, for petitioners.
Roosevelt Randolph and Harold M. Knowles of Knowles & Randolph, and Larry K. White, Tallahassee, for respondents.
Marguerite H. Davis of Katz, Kutter, Haigler, Alderman, Eaton, Davis and Marks, Tallahassee, amicus curiae for Florida Patient's Compensation Fund.
Jack W. Shaw, Jr. of Mathews, Osborne, McNatt & Cobb, P.A., Jacksonville, amici curiae for Florida Hospital Ass'n and Florida Medical Ass'n.
C. Rufus Pennington, III of Margol & Pennington, P.A., Jacksonville, amicus curiae for Academy of Florida Trial Lawyers.
McDONALD, Justice.
We review Tallahassee Memorial Regional Medical Center, Inc. v. Meeks, 543 So.2d 770 (Fla. 1st DCA 1989), in which the district court certified conflict with Mercy Hospital, Inc. v. Menendez, 371 So.2d 1077 (Fla. 3d DCA 1979), appeal dismissed and cert. denied, 383 So.2d 1198 (Fla. 1980). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We quash in part and approve in part Meeks and approve Menendez.
On October 4, 1979, Tallahassee Memorial Regional Medical Center (TMRMC) ambulance service paramedics Baker and Allen responded to a call for emergency care at the home of five-year-old Sheronda Meeks. They examined Meeks but did not transport her to the hospital; unfortunately, she died later that night of congestive heart failure. A two-part complaint alleged negligence by Baker and Allen for performing an inadequate examination, improperly taking Meeks' physical history, failing to seek the advice of a physician, and refusing to transport Meeks to TMRMC; and by TMRMC for failing to properly supervise, train, and instruct the paramedics. A jury verdict for Meeks' estate resulted in a final judgment of approximately $248,000.
On appeal TMRMC argued that the trial judge reversibly erred in permitting use of statements contained in Baker's "incident report" for impeachment and improperly denied its postverdict motion to limit the amount of its liability pursuant to subsection 768.54(2)(b), Florida Statutes (1979).[1] The district court rejected each argument and affirmed the trial court's judgment. We disagree with the district court's holding that the trial judge properly denied TMRMC's postverdict motion to limit its liability. We also disagree with the holding that the trial judge did not err in allowing use of incident report statements for impeachment, but find this error harmless.
We first address the question whereupon the district court certified conflict with Menendez, i.e., may an injured plaintiff, who did not name the Florida *780 Patient's Compensation Fund (the fund) as a party defendant in a medical malpractice lawsuit against a fund member health care provider and two of its employees acting within the scope of their employment, recover a final judgment in excess of the limits set forth in subsection 768.54(2)(b). The district court answered in the affirmative and held that the health care provider must "join" the fund as a defendant to entitle itself to the cap on liability provided in subsection 768.54(2)(b). In the alternative the court held that the health care provider's failure to raise that statute as an affirmative defense in its answer to plaintiff's pleading waived the right to raise it following rendition of the verdict. 543 So.2d at 775. Menendez, on the other hand, held that the plaintiff's failure to join the fund as a party defendant limited its recovery against the fund member health care provider to the maximum amount set forth in subsection 768.54(2)(b). Menendez also refused to require, as contrary to the intent of the statute, the health care provider to plead the liability limitations applicable to fund members as an affirmative defense. 371 So.2d at 1079.
We favor the decision reached in Menendez. Subsection 768.54(2)(b)[2] specifies only three requirements which a health care provider must fulfill to limit its liability as provided therein: pay the annual fees for fund membership; provide an adequate defense for the fund; and pay at least the initial $100,000 or the maximum limit of the underlying coverage it maintained when the incident occurred, whichever is greater. There are no requirements, contrary to the district court's holding, that the health care provider must join the fund as a defendant or plead the statutory limitation as an affirmative defense, and we decline to create such requirements judicially in light of the statute's plain and unequivocal language.
Moreover, the holding in Menendez is consistent with Taddiken v. Florida Patient's Compensation Fund, 478 So.2d 1058 (Fla. 1985), and Florida Patient's Compensation Fund v. Tillman, 487 So.2d 1032 (Fla. 1986), which held that a plaintiff's failure to join the fund as a defendant in a medical malpractice action within the applicable two-year statute of limitations, even though the action against the health care provider had been timely filed, precluded recovery against the fund. Thus, as Taddiken and Tillman indicate, the plaintiff has the burden of joining the fund as a party defendant in a medical malpractice lawsuit against a fund member health care provider.
Nevertheless, the district court held that, because the statute creating the fund only delineated a relationship between the fund and its members, Meeks' failure to join the fund only prevented her recovery against the fund and had no effect on her ability to recover the total amount of the judgment against TMRMC. We disagree. The fund secures health care providers from medical malpractice liability damages in excess of one hundred thousand dollars and provides for the payment of such damages to those members of the public who become victims of medical malpractice. Florida Patient's Compensation Fund v. Von Stetina, 474 So.2d 783 (Fla. 1985). See also Owens v. Florida Patient's Compensation Fund, 428 So.2d 708 (Fla. 1st DCA) (the fund has a direct obligation to the plaintiff-patient in the action against the participating health care provider), review denied, 436 So.2d 100 (Fla. 1983). The statute creating the fund does not create a relationship solely between the fund and its member health care provider.
Furthermore, the district court's holding is contrary to the plain language of *781 subsection 768.54(2)(b) and subsection 768.54(3)(e)(1), Florida Statutes (1979). As we earlier noted, subsection 768.54(2)(b) limits the amount of a health care provider's liability if it fulfills the three requirements therein. Subsection 768.54(3)(e)(1)[3] precludes a plaintiff from recovering against the fund unless the fund is named as a defendant. As these two statutes indicate, the plaintiff must join the fund as a party defendant or the amount of recovery is limited to the statutory maximum amount of liability applicable to health care providers eligible under subsection 768.54(2)(b). Taddiken v. Florida Patient's Compensation Fund, 449 So.2d 956 (Fla. 3d DCA 1984), approved, 478 So.2d 1058 (Fla. 1985). In the case at bar, if TMRMC qualified as a fund member under subsection 768.54(2)(b) at the time the incident occurred,[4] its liability cannot exceed $100,000 or the maximum limit of the underlying coverage it maintained at that time, whichever is greater. Contrary to Meeks' contention, we further hold that if the hospital qualifies for the $100,000 limitation of liability so do the hospital's employees. Higley v. Florida Patients' Compensation Fund, 525 So.2d 865 (Fla. 1988).
We now turn to the question of whether the trial court erred in permitting use of Baker's incident report statements for impeachment. Baker testified at trial that she was not informed that Meeks suffered from a heart murmur. Counsel sought to impeach her on this issue by referring to her written statement on the ambulance run report that "doctor told them patient had a `heart murmur and heart beats too fast.'" Baker replied that the statement was a misquote. Meeks' counsel, in an effort to impeach this explanation, asked her if she had made the same misstatement the following day on the incident report when she wrote that "[w]e asked her mother if the doctor could have said that the patient had a heart murmur and she replied `[y]es.'" The incident report itself was not admitted into evidence.
Generally, a witness may be impeached by evidence of statements inconsistent with or contradictory to testimony at trial. Taylor v. State, 139 Fla. 542, 190 So. 691 (1939); Colbert v. State, 320 So.2d 853 (Fla. 1st DCA 1975), cert. denied, 330 So.2d 726 (Fla. 1976). See United Sand & Material Corporation v. Florida Industrial Commission, 201 So.2d 451 (Fla. 1967). Notwithstanding this general rule, TMRMC argues that subsection 395.041(4), Florida Statutes (1985), regarding internal risk management procedures, prevents use of Baker's incident report for any purpose. This subsection states that incident reports "shall be subject to discovery, but shall not be admissible as evidence in court." The trial judge allowed use of the incident report for impeachment. Although TMRMC admits that subsection 395.041(4) does not directly preclude use of incident reports for impeachment, it argues that this Court should adopt the reasoning of Johnson v. United States, 780 F.2d 902 (11th Cir.1986). Johnson dealt with the statutory precursor to subsection 395.041(4) and held that, to insure the reliability and efficacy of the required reports, they should not be used in litigation. TMRMC further argues that subsection 395.041(4) is analogous to subsection 316.066(4), Florida Statutes (1985), involving accident reports, which states that "[n]o such report shall be used as evidence in any trial, civil or criminal, arising out of an accident." This Court has previously held that statements contained in accident reports compiled under section 316.066 may not be used for impeachment. Ippolito v. Brener, 89 So.2d 650 (Fla. 1956). *782 We agree that privileged statements inadmissable in evidence cannot be used in impeachment.
Meeks argues that subsection 395.041(4) is not implicated in this case because the report stemmed from an emergency ambulance activity and, hence, subsection 401.30(3), Florida Statutes (1979), which provides that records of emergency calls have a privileged and confidential status, but may be disclosed in civil or criminal actions, controls. The problem with this approach is that Baker had fully completed and filed the ambulance run report the night of the run. The second report was sought after Meeks' death. This report is not available for our review, but it was referred to by all at trial as an "incident report" and, considering the circumstances under which it was made, we conclude that it was a section 395.041 report. But for this statutory privilege, it would have clearly been admissible. Because of the privilege we find that it was error to refer to it for any purpose.
This does not mean, however, that the verdict should be vacated or a new trial ordered. Not only must an appellant demonstrate error in the improper admission of evidence, prejudice therefrom must also be demonstrated.[5] In determining this issue the reviewing court looks at the totality of the evidence. In this case the evidence which we now determine to have been improperly admitted was not introduced to establish a fact or to negate a fact. Its purpose was to impeach an explanation of a prior statement which had been used to impeach trial testimony. It was cumulative impeachment. Considering the totality of the evidence, we conclude that the introduction of this one privileged statement did not prejudicially affect the jury's determination of negligence and that no reversible error occurred in its admission. The verdict of liability should stand.
We therefore quash the opinion of the district court of appeal as it relates to the amount of judgment that may be entered against the defendants collectively, but approve the result affirming the liability of the defendants. We remand to the district court of appeal with directions to remand the case to the trial court for proceedings consistent with this opinion.
It is so ordered.
EHRLICH, C.J., and OVERTON, BARKETT, GRIMES and KOGAN, JJ., concur.
SHAW, J., recused.
NOTES
[1] Two other issues were presented which we do not address.
[2] § 768.54(2)(b), Fla. Stat. (1979), provides in part:

A health care provider shall not be liable for an amount in excess of $100,000 per claim or $500,000 per occurrence for claims covered under subsection (3) if the health care provider had paid the fees required pursuant to subsection (3) for the year in which the incident occurred for which the claim is filed, and an adequate defense for the fund is provided, and pays at least the initial $100,000 or the maximum limit of the underlying coverage maintained by the health care provider on the date when the incident occurred for which the claim is filed, whichever is greater, of any settlement or judgment against the health care provider for the claim in accordance with paragraph (3)(e).
[3] § 768.54(3)(e)(1), Fla. Stat. (1979), states in pertinent part that "[a]ny person may file an action against a participating health care provider for damages covered under the fund, except that the person filing the claim shall not recover against the fund unless the fund was named as a defendant in the suit." (Emphasis added.)
[4] A review of the record reveals that the trial judge did not determine whether TMRMC had fulfilled the three requirements necessary to limit its liability as set forth in § 768.54(2)(b). The record seemingly supports the contention that it did, but this finding should first be made by the trial court. This case, therefore, must be remanded to the trial court to determine if TMRMC has indeed met these requirements.
[5] § 59.041, Fla. Stat. (1989), states:

No judgment shall be set aside or reversed, or new trial granted by any court of the state in any cause, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice. This section shall be liberally construed.