PER CURIAM.
We have for review Gup v. Cook, 549 So.2d 1081 (Fla. 1st DCA 1989), in which the court certified conflict with Mercy Hospital, Inc. v. Menendez, 371 So.2d 1077 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1198 (Fla.1980). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We quash in part the decision of the district court below.
In 1977, Katherine Cook, a twenty-four-year-old mother of two, was pregnant with her third child. When she discovered blood in her urine, she was examined by Dr. Gup and several other urologists at the Medical Center Clinic (Clinic), who prescribed medication. She experienced no further urinary problems until two years later when she again found blood in her urine and was examined by a different urologist who determined that she had a malignant bladder tumor. Mrs. Cook underwent radical surgery to remove her bladder, uterus, right fallopian tube, and ovary. She sued Dr. Gup and the Clinic for negligence in failing to perform the proper diagnostic tests. She alleged that if the defendants had used due care the cancer could have been treated less drastically and her life expectancy would have been increased. The trial court denied the defendants’ postverdict motion to limit the judgment pursuant to section 768.54(2), Florida Statutes (1977), and awarded Mrs. Cook $500,000 for future medical expenses and $500,000 for past and future pain and suffering, reduced by fifteen percent comparative negligence. The district court ruled that the defendants’ motion to limit damages to $100,000 each was properly denied because the defendants failed to join the Florida Patients’ Compensation Fund (Fund) as a party. *927 The court affirmed the award with the exception of the portion for future medical expenses, for which it directed remittitur to $57,250 or a new trial.
The plaintiffs contend that the district court decision should be approved. They assert that the defendants are not entitled to the limitation on liability contained in section 768.54(2) because of the following. 1) The section acts to limit liability only between the health care provider and the Fund, not between the health care provider and the plaintiff. 2) The defendants failed to place $100,000 per claimant in an escrow account. 3) It is the defendant, not the plaintiff, who is required to join the Fund as a party and the present defendants failed to do so. 4) The defendant must plead the statutory limitation as an affirmative defense and the present defendants did not do so.
We have since decided issues 1), 3) and 4) adversely to the present plaintiffs in Tallahassee Memorial Regional Medical Center, Inc. v. Meeks, 560 So.2d 778 (Fla.1990), wherein we ruled that “the plaintiff must join the fund as a party defendant or the amount of recovery is limited to the statutory maximum amount of liability,” id. at 781, and that “[tjhere are no requirements ... that the health care provider must ... plead the statutory limitation as an affirmative defense.” Id. at 780. As to the second issue, the plaintiffs point to section 768.54(2), which provides in part:
(b) A health care provider shall not be liable for an amount in excess of $100,-000 per claim for claims covered under subsection (3) in this state if, at the time the incident giving rise to the cause of the claim occurred, the health care provider:
1. Had:
a. Posted bond in the amount of $100,000 per claim;
b. Proved financial responsibility in the amount of $100,000 per claim to the satisfaction of the board of governors of the fund through the establishment of an appropriate escrow account;
c. Obtained medical malpractice insurance in the amount of $100,000 or more per claim from private insurers or the Joint Underwriting Association established under subsection 627.351(7); or
d. Obtained self-insurance as provided in s. 627.357, providing coverage in an amount of $100,000 or more per claim, and
2. Had paid, for the year in which the incident occurred for which the claim was filed, the fee required pursuant to subsection (3).
The plaintiffs assert that section 768.-54(2)(b)(1)(b) requires that the health care provider place $100,000 in escrow for each claim that is filed against it and that the present defendants were in violation of this rule because at the time of their negligence three other malpractice claims were pending against them and yet they had placed a total of only $100,000 in escrow.
Unlike sections 768.54(2)(b)(1)(a), (c) and (d), the plain language of section (b) does not require the actual posting of a set amount in the form of a bond or insurance policy. Section (b) simply requires that the provider must, by the establishment of an appropriate escrow account, prove to the satisfaction of the board of governors (board) of the Fund that the provider is financially responsible for $100,000 for each claim that is filed against it. While the standards in sections (a), (c) and (d) are objective, that in section (b) is discretionary.
Accordingly, we conclude that the legislature intended section (b) to mean just what it says: A health care provider’s liability may be limited where it proves financial responsibility (i.e., that it can cover $100,000 per claim) to the board’s satisfaction by establishing an adequate escrow account. The account need not contain $100,000 per claim unless in the discretion of the board such amount is necessary to establish financial responsibility for a particular provider. In the present case, it is undisputed that the defendants had through their escrow account established financial responsibility to the board’s satisfaction.
*928 We quash that portion of the district court decision that affirmed the denial of the defendants’ motion to limit liability. We approve the remainder of the decision and remand for proceedings consistent with this opinion.
It is so ordered.
SHAW, C.J. and OVERTON, McDonald, barkett, grimes, KOGAN and HARDING, JJ., concur.