821 So.2d 1222 (2002)
Jessica SHEARON, Appellant,
v.
Shaun SULLIVAN and Kathleen Sullivan, Appellees.
No. 1D01-2676.
District Court of Appeal of Florida, First District.
July 26, 2002.
*1223 William L. Sundberg, of Sundberg & Hessman, P.A., Tallahassee, for Appellant.
Jennifer C. Worden and Michael T. Callahan, of Callahan Law Firm, Tallahassee, for Appellees.
BROWNING, J.
The genesis of this litigation was an October 1998 accident in Tallahassee in which an automobile driven by then 17-year-old Jessica Shearon (Appellant) was struck by a pickup truck owned by Shaun Sullivan and driven by his daughter, Kathleen Sullivan (Appellees). Appellant contends that the trial court abused its discretion, inter alia, by striking the testimony of her treating neurologist regarding future medical care and costs. We reverse and remand for a new trial. White v. Westlund, 624 So.2d 1148 (Fla. 4th DCA 1993) (noting that whether plaintiff has satisfied burden of proving future medical treatment is reasonably necessary is jury issue if supported by competent evidence, and whatever qualification is placed on expert's opinion goes to weight, not admissibility, of opinion); Vitt v. Ryder Truck Rentals, Inc., 340 So.2d 962 (Fla. 3d DCA 1976).
Appellant's complaint alleged that as a result of Appellees' negligence, she had suffered the full panoply of damages available to personal-injury plaintiffs. Although Kathleen Sullivan admitted some fault for exiting a shopping center parking lot and pulling into Appellant's lane, the evidence conflicted as to whether Appellant had worn a seat belt at the time of the accident. The jury found negligence on the part of Appellant and Appellees, respectively 45 per cent and 55 per cent, which was a legal cause of the loss, injury, or damage to Appellant. Appellant was found to have sustained a permanent injury within a reasonable degree of medical probability as a result of the accident. The jury awarded Appellant $10,887.52 for past medical expenses; $2,675.00 for future medical expenses, over five years; $600.00 for past non-economic damages; and zero for future non-economic damages.
Appellant treated with a chiropractor, Dr. Jenkins, and with a neurologist, Dr. Martin, for her neck injuries. Her chiropractor testified within a reasonable degree of medical probability that the future costs of Appellant's chiropractic care would be $500.00-$600.00 a year for the next five years, i.e., a $2,500.00-$3,000.00 total. The chiropractor's testimony supports the jury's award of $2,675.00 for future medical expenses, over a five-year period. Appellant argues that the jury was wrongly denied the opportunity to hear the treating neurologist's testimony regarding future medical care and costs, and that if Dr. Martin's excluded testimony had been admitted into evidence, it is more than likely that the award for future medical expenses would have been larger.
Evidence was presented that Appellant's life expectancy at the time of trial was 60.4 years. In his pretrial videotaped deposition for use at trial, Dr. Martin, who is board-certified in neurology, testified within a reasonable degree of medical probability that Appellant would need future medical care for her injuries. Within a reasonable degree of medical probability, he opined also that Appellant's future medical prescription costs would be about *1224 $80.00 a month, or almost $30,000.00 over a 30 year period. The doctor opined that Appellant would continue to have pain that restricts certain activities of daily living, and would continue to require some type of medication on an intermittent basis for an indefinite period, possibly for life. Noting that Appellant continued to experience significant pain more than two years after the accident, Dr. Martin expected Appellant to have neck pain for the rest of her life. He opined that because Appellant was still young and could be expected to live longer than 30 more years, the future costs of medication would be "fairly high" even for the intermittent use of medications over a lifetime. Within a reasonable degree of medical probability, Dr. Martin opined that Appellant suffered a permanent injury from her October 1998 automobile accident. He assigned Appellant a 5 per cent permanent whole-body disability under the applicable medical guidelines. While acknowledging that Appellant would not necessarily be treating with him, Dr. Martin testified that "someone" would need to monitor her medication and "keep track" of her. Assuming that Appellant continued treating with him, the doctor opined within a reasonable degree of medical probability that Appellant would be seen every 3-4 months, at a charge of $55.00-$70.00 per visit, barring aggravating factors like complications, side effects, or ineffectiveness in the medication regimen. He opined that patients taking narcotics need to be monitored to assure there is no problem with addiction or depression.
When questioned on cross-examination during the deposition about his opinion that Appellant's neck pain will continue for her lifetime, Dr. Martin characterized "a reasonable degree of medical probability" as "a 51-per cent standard." He acknowledged that such a standard allows a 49 per cent chance that Appellant will not experience neck pain for the rest of her life. However, accounting for his understanding that Appellant's pain had continued for more than two years since the accident, the doctor opined that the odds of Appellant's continuing to have neck pain are probably greater than 51 per cent but less than 100 per cent. When asked how long a patient remains on the synthetic narcotic Vicodin, Dr. Martin replied there is no "typical" time. Some patients with acute injuries are on it for 6-8 weeks, whereas other patients with chronic, stable pain syndrome are on the drug indefinitely. The doctor opined it is only "a possibility," not a certainty, that Appellant will be prescribed Vicodin for life. When the witness was asked what "percentage of possibility" existed that Appellant would be taking Vicodin for the next 30 years, Appellant's attorney objected to the form of the question and said "it's speculative." The witness answered: "It's a possibility. It's very speculative." He testified that Appellant had told him she had tried to get off the medication but really could not function well without it. Dr. Martin never retracted his initial statements that Appellant's future medical care and costs will be necessary to a reasonable degree of medical probability, and Appellant's counsel "rehabilitated" this witness on redirect examination.
At a pretrial hearing, Appellees' attorney objected to the admission into evidence of certain portions of Dr. Martin's deposition regarding future medical treatment and future medical costs alleged to be merely "speculative or based on less than probability." Specifically, Appellees' counsel referred to the neurologist's opinion that Appellant would incur medical prescription costs of almost $30,000.00 over 30 years. Counsel cross-referenced Dr. Martin's other testimony opining that Appellant would require some type of *1225 medication intermittently for an indefinite period, possibly for life. Counsel referred also to the doctor's opinion that whether Appellant would be taking Vicodin for 30 years was very speculative. In response, Appellant's lawyer asserted that the real issue governing the testimony in question is not its admissibility, but the weight to be accorded it by the jury. White, 624 So.2d at 1148. Appellees' attorney replied that Dr. Martin's challenged testimony concerning future medical treatment and future medical costs did not satisfy the requisite "standard of probability." Having heard argument of counsel, the trial court announced that the challenged portions of Dr. Martin's deposition would not be admitted into evidence. During the trial, Dr. Martin's deposition, without the portions stricken by the trial court at the behest of Appellees' lawyer, was read to the jury. To preserve the issue, Appellant's counsel proffered Dr. Martin's excluded testimony regarding the need for future medical care and the cost of future medications. After Appellant's attorney completed his proffer, the trial court stated:
Thatif that's what y'all presented to me the other day, then I made a mistake. That is admissible. You asked him, within a reasonable degree of medical probability, $80 a month. I remember some qualifications of that.
In response, Appellees' counsel argued that Dr. Martin's testimony had been "qualified severely" on cross-examination when the witness referred to certain medical possibilities. The trial court agreed with Appellees' counsel and reiterated its decision to exclude the challenged portions of the deposition for being speculative and not probative.
The standard of review of a trial court's exclusion of evidence is abuse of discretion. Geldreich v. State, 763 So.2d 1114 (Fla. 4th DCA 1999). Thus, as the reviewing court, we employ the "reasonableness test" to determine whether the trial court abused its discretion by excluding certain portions of Dr. Martin's testimony dealing with future medical care and expenses. Allstate Ins. Co. v. Manasse, 707 So.2d 1110, 1111 (Fla.1998). It is a longstanding principle that only those future medical expenses that are "reasonably certain to be incurred" are recoverable. Loftin v. Wilson, 67 So.2d 185, 188 (Fla. 1953); Sullivan v. Price, 386 So.2d 241, 244 (Fla.1980) (holding that expert medical testimony is not required as prerequisite for jury instruction on future damages, and instruction was appropriate where jury could have concluded "with reasonable certainty" that consequences of injury would continue into future based on uncontradicted evidence of nature of injury, its duration, victim's job demotion, and victim's lack of recovery at time of trial); White, 624 So.2d at 1150. "From this, it follows that a recovery of future medical expenses cannot be grounded on the mere `possibility' that certain treatment `might' be obtained in the future." Id. Thus, where "there is sufficient evidence from which a jury could infer a need for future medical treatment with reasonable certainty, an award of future medical expenses is proper." Id. at 1150-51.
Applying these rules of law to the instant trial, we conclude, in the words of the Fourth District Court, that where Dr. Martin opined on direct examination that future medical care and costs would be necessary to a reasonable degree of medical probability, then "whatever qualification [wa]s placed on the opinion ... goes to the weight of the opinion, and not its admissibility." Id. at 1151 (emphasis in original). As a basis for seeking to exclude the testimony in question, Appellees' attorney relied on some of Dr. Martin's testimony on cross-examination *1226 acknowledging that future medical care usually, if not always, involves some uncertainty. Although the trial court acknowledged on the record, after the proffer, that the testimony of Dr. Martin in question was admissible, and that the court's exclusionary ruling was "a mistake," the court nevertheless seems to have been swayed ultimately by Appellees' argument that the expert had qualified his views on cross-examination to the point where his opinions about future medical care and expenses, considered as a whole, were merely speculative. Given the record before us, including the fact that Appellant's counsel "rehabilitated" Dr. Martin on redirect examination of the issue of future medical care and expenses, we conclude that the trial court's exclusion of this evidence is unsupported by any reasonable view of the issue before it. The jury should have been allowed to hear, and weigh, Dr. Martin's testimony concerning future medical care and expenses. Id.
Appellant correctly distinguishes the facts in several other decisions cited by Appellees in which speculative testimony was excluded and, significantly, there appears not to have been any other evidence from which a jury could find a reasonable certainty of future medical expenses. See, e.g., Gup v. Cook, 549 So.2d 1081 (Fla. 1st DCA 1989), quashed in part, 585 So.2d 926 (Fla.1991); 3-M Corp. v. Brown, 475 So.2d 994 (Fla. 1st DCA 1985); Crosby v. Fleming & Sons, Inc., 447 So.2d 347 (Fla. 1st DCA 1984). Appellant contends that her case was severely prejudiced, in that if the trial court had not erroneously excluded the testimony in question, it is more than likely that the jury would have awarded more than $2,675.00 for future medical expenses, over a five-year period. We agree that the exclusion of Dr. Martin's testimony constitutes an abuse of discretion compelling a reversal and remand for a new trial. In light of our holding on this issue, we decline to address Appellant's other issues on appeal.
We REVERSE and REMAND for a new trial.
MINER and PADOVANO, JJ., concur.